Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Robin Pleak*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Pleak,<br><br>           Plaintiff,<br><br>     v.<br><br>Metropolitan Life Insurance Company, Raytheon Company, Raytheon Company Long Term Disability Plan,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Robin Pleak (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Pima County, Arizona.

3. Upon information and belief, Defendant Raytheon Company (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy, which was fully insured and administered by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife"). The specific MetLife long term disability policy is known as Group Policy 301791. The Company's purpose in subscribing to the MetLife policy was to provide disability insurance for its employees. Upon information and belief, the MetLife policy may have been included in and part of the Raytheon Company Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to MetLife. Plaintiff believes that as it relates to his claim, MetLife functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes MetLife operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* MetLife's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also

6. The Company, Plan and MetLife conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about January 26, 2010 due to serious medical conditions and was unable to work in his designated occupation as a Senior Tech Support Engineer II. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff applied for, received and exhausted his short term disability benefits under the relevant short term disability policy.

11. Plaintiff then applied for long term disability benefits under the relevant MetLife policy. The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

---

exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

>You are totally disabled when MetLife determines that, because of sickness or an injury which is not covered by an applicable workers' compensation statute:
>
>>A. A participant cannot do the essential elements and substantially all of the duties of his or her job with the Employer even with reasonable accommodations; and
>>
>>B. Cannot do any other job for which he or she is fit by education, training or experience.

12. In support of his claim for long term disability benefits, Plaintiff submitted to MetLife medical records from his treating physicians supporting his disability as defined by the relevant MetLife policy.

13. MetLife notified Plaintiff in a letter dated April 15, 2010 that his claim for long term disability benefits had been approved and paid benefits for the period of April 15, 2010 through July 28, 2010.

14. MetLife notified Plaintiff in a letter dated October 25, 2010 that it was terminating benefits beyond July 28, 2010.

15. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the October 25, 2010 denial of his claim for long term disability benefits and, in support of his appeal, Plaintiff submitted additional medical evidence to MetLife demonstrating his total disability as defined in the relevant MetLife policy.

16. In support of his appeal, Plaintiff submitted to MetLife updated medical records from his treating medical professionals who opined he was unable to return to work and provided functional assessment scores which indicated he was unable to function in many activities of daily living.

17. As part of its review of Plaintiff's claim for long term disability benefits, MetLife obtained a medical review of Plaintiff's claim from Ernest Gosline, M.D.

18. Upon information and belief, Plaintiff believes Dr. Gosline is a long time consultant for the disability insurance industry. Plaintiff believes Dr. Gosline has an

incentive to protect his own consulting relationships with the disability insurance industry and MetLife by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

19. In a letter dated December 2, 2010, MetLife notified Plaintiff it had denied his appeal for long term disability benefits under the MetLife policy. In the letter, MetLife also notified Plaintiff that he had exhausted his administrative levels of review and could file a civil action in federal court pursuant to ERISA.

20. In evaluating Plaintiff's claim on appeal, MetLife had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [2]

21. Plaintiff believes MetLife failed to consider the combination of his medical conditions when it determined he no longer met the definition of disability in the relevant policy.

22. Plaintiff believes the reason MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles it undertook as decision maker and payor of benefits which created an

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  inherent conflict of interest and this conflict may also be the reason the Plan retained
2  MetLife to administer his disability claim.

3      23.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of
4  interest of MetLife and any individual who reviewed his claim and the Court may properly
5  weigh and consider evidence regarding the nature, extent and effect of *any* conflict of
6  interest which may have impacted or influenced MetLife's decision to deny his claim.

7      24.    With regard to whether Plaintiff meets the definition of disability set forth in
8  the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if
9  the Court concludes the Plan confers discretion, the unlawful violations of ERISA
10 committed by the Plan and its administrators as referenced herein are so flagrant they
11 justify *de novo* review.

12     25.    As a direct result of MetLife's decision to deny Plaintiff's disability claim he
13 has been injured and suffered damages in the form of lost disability benefits, in addition to
14 other potential employee benefits he may have been entitled to receive through or from the
15 Plan and/or Company as a result of being found disabled.

16     26.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
17 prejudgment interest, reasonable attorney's fees and costs from Defendants.

18     27.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum
19 pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate his for
20 losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

21     WHEREFORE, Plaintiff prays for judgment as follows:

22     A.    For an Order requiring Defendants to pay Plaintiff disability benefits and
23 any other employee benefits he may be entitled to as a result of being found disabled
24 pursuant to the Plan and/or Policy from the date he was first denied these benefits
25 through the date of judgment and prejudgment interest thereon, as well as any other
26

1 employee benefits he may be entitled to from the Plan and/or Company as a result of
2 being found disabled;

3       B.      For an Order directing Defendants to continue paying Plaintiff the
4 aforementioned benefits until such time he meets the conditions for termination of benefits;

5       C.      For attorney's fees and costs incurred as a result of prosecuting this suit
6 pursuant to 29 U.S.C. §1132(g); and

7       D.      For such other and further relief as the Court deems just and proper.

8       DATED this 30th day of May, 2011.

9       SCOTT E. DAVIS. P.C.

10       By:    */s/ Scott E. Davis*
11                 Scott E. Davis
                Attorney for Plaintiff